## Case No. 9,441.

### In re MERCHANTS' INS. CO.

[3 Biss. 162; 6 N. B. R. 43; 4 Chi. Leg. News, 73; 20 Pittsb. Leg. J. 32.] [1]

District Court, N. D. Illinois. Dec., 1871.

BANKRUPTCY—ACT OF — STATE PROCEEDINGS IN INSOLVENCY—JURISDICTION EXCLUSIVE—DUTY IN INSOLVENCY—PAYMENTS THEREAFTER.

1. A fire insurance company is clearly within the scope and provisions of the bankrupt law [of 1867 (14 Stat. 517)].

2. The appointment by a state court of a receiver to take possession of the property and assets of the corporation is "a taking on legal process" within the meaning of the thirty-ninth section of the bankrupt act.

3. It is not a valid objection to the jurisdiction of this court that the proceedings in the state court were in accordance with a general statute of the state, and part of its organic law, and that the state court had first obtained jurisdiction of the parties and subject-matter. Such a construction would effectually defeat the operation of the bankrupt law.

[Cited in Re Safe-Deposit & Savings Inst., Case No. 12.211; Re New Amsterdam Fire Ins. Co., Id. 10,140.]

4. Nor is it a valid objection that the state statute under which the proceedings were instituted is not an insolvent law. If the fact of insolvency exists, and the corporation is within the provisions of the bankrupt law, this court has exclusive jurisdiction, and the fact that the state law does not purport to relieve the bankrupt from his debts, cannot be urged as a reason why the state court should hold the assets and administer the estate.

[Cited in Re Brinkman, Case No. 1,884.]

5. Though the proceedings in the state court may have been within its powers and jurisdiction, yet when the fact of bankruptcy intervenes the exclusive jurisdiction of this court attaches.

[Cited in Re Safe-Deposit & Savings Inst., Case No. 12.211; Re Green Pond R. Co., Id. 5,786; Re Hathorn, Id. 6,214.]

6. When the corporation found itself insolvent, it should have at once filed a voluntary petition in bankruptcy; and failure so to do, and acquiescence in the proceedings against it by the state court, is itself an act of bankruptcy.

7. The payment by the corporation, when actually insolvent, of the rent necessary to preserve a valuable lease, is an act of bankruptcy; and although such payment was judicious, and made in good faith, and such an act as would have been authorized by this court. these facts do not change the character of the act under the law.

In bankruptcy. The petitioning creditor in this case, the Singer Manufacturing Company, filed a petition in bankruptcy against the Merchants' Insurance Company, on an indebtedness upon a policy of insurance issued by the latter company, upon which loss was sustained on the 9th of October, 1871, and the chief act of bankruptcy alleged is that said insurance company, being insolvent, did on the 6th day of November, 1871, suffer its property to be taken on legal process, under certain proceedings instituted by the attorney

[1] [Reported by Josiah H. Bissell. Esq., and here reprinted by permission. 20 Pittsb. Leg. J. 32, contains only a partial report.]

general of Illinois, in the circuit court of Cook county, pursuant to the twenty-third section of the statute of that state approved March 11th, 1869, entitled, "An act to incorporate and govern fire and marine insurance companies, etc." The answer of the insurance company admitted the substantial facts alleged in the petition, and submitted to the court whether those facts constitute an act of bankruptcy within the meaning of the law.

Eldridge & Tourtellotte, for petitioner.
McCagg, Fuller & Culver, for respondent.

Before DRUMMOND, Circuit Judge, and BLODGETT, District Judge.

BLODGETT, District Judge. The respondent is a corporation, created under a special charter granted by the legislature of Illinois in 1861, and since 1863 up to about the 6th of November last, said company has been engaged in doing a fire and marine insurance business, pursuant to the powers granted in its act of incorporation, having its principal office in the city of Chicago. By reason of the losses sustained by said company from the great fire which occurred in this city on the 9th of October last, said company became insolvent, and on the 31st of October last the people of the state of Illinois, by the attorney general of the state, filed their bill of complaint in the circuit court of Cook county, pursuant to the 23d section of the general insurance law of this state, alleging in substance that said company had become insolvent and unable to pay its liabilities, and that its assets were insufficient to justify the continuance of said company in business, and praying that said corporation might be dissolved, and that a receiver be appointed to take charge of its assets; and on the 6th of November last the officers of said company, fearing that judgments might be obtained in certain suits then pending against the company, and the plaintiffs in such suits thereby obtain an undue preference over other creditors, consented to the appointment of a receiver by said court in accordance with said bill, and W. E. Doggett, Esq., was accordingly appointed such receiver, and the company has since delivered over to him all its assets and property. No charge of willful or intended fraud is brought against the corporation or its officers, it being conceded that its officers and managers are among the most upright and capable of our citizens, and that the present insolvency of the company results from circumstances beyond the control of those in charge of its affairs.

Upon these admitted facts we are called upon to adjudicate. There can be no doubt. or at least we have none, that this corporation is one of that class of corporations intended to be within the scope and provisions of the general bankrupt law. The 37th section declares that "the provisions of this act shall apply to all moneyed business or commercial corporations and joint stock com-

panies." The business of insurance, for the carrying on of which this company was incorporated and in which it has been engaged, is clearly included within the definitions given by the statute.

The object and intent of the general bankrupt law is to place the administration of the affairs of insolvent persons and corporations exclusively under the jurisdiction of the federal courts sitting as courts of bankruptcy; and the enactment of the general bankrupt law now in force suspended all actions and proceedings under state insolvent laws. Com. v. O'Hara [6 Phila. 402]; Perry v. Langley [Case No. 11,006]; Van Nostrand v. Carr [30 Md. 128]; Martin v. Berry [37 Cal. 208].

It also seems clear to us that the appointment of a receiver by the state court to take possession of the property and assets of the person, firm, or corporation, and apply the same to the payment of debts, is a "taking on legal process," within the meaning of the 8th clause of the 39th section of the bankrupt act. The receiver of a court of chancery is its executive officer, as much so, to all intents and purposes, as a sheriff of a court of law; and the goods or property in his hands are as much in the custody of the law as if levied upon under an execution or attachment. Indeed, the purpose for which the receiver in this case takes the property is the same as that of a sheriff in making his levy, except that the scope of the receiver's warrant is more comprehensive, he being required to pay all debts, while the sheriff only seeks the payment of the specific debt mentioned in his execution or attachment.

Although I am not aware that this particular point has ever before been raised in this court, it has often been decided elsewhere.

But it is objected that the proceedings in the state court here complained of being in accordance with a general statute of this state and part of the organic law by which the respondent exists, and being predicated mainly upon the reserved right of the state to protect its citizens against irresponsible insurance companies, and the state court having acquired jurisdiction of the parties and subject-matter, this court cannot now interfere as a bankrupt court and take charge of and administer the assets in question, although the insolvency of the respondent is fully conceded.

It seems enough to suggest, in answer to this position, that if correct, any state could effectually defeat the operation of any bankrupt law passed by congress by simply providing that any person or corporation, if deemed insolvent or incapable of doing business by a state officer, might, under the power of exercising and enforcing police regulations or enactments by the states, be wound up, and its assets administered upon, in the state courts, notwithstanding such person or corporation might be insolvent and guilty of all the acts of bankruptcy provided for in the general bankrupt law.

It is further urged that the proceeding in question does not come within the terms of the bankrupt act, because the state law under which it is instituted is not an insolvent law inasmuch as it does not purport to discharge the debtor from its liabilities; but we fail to perceive how the treatment the debtor may receive at the hands of the state court can avail to sustain that court's control over the assets. If the fact of insolvency exists and the person or corporation is within the provisions of the bankrupt law, the federal courts sitting in bankruptcy have exclusive jurisdiction of his property, and the fact that a state law does not purport or attempt to relieve the debtor from his debts cannot, it seems to us, be urged as a reason why the state court should hold the assets and administer them after proper proceedings in bankruptcy have been instituted in the federal courts.

We might further answer this objection by the suggestion that a discharge of an insurance company's liabilities under this state statute and proceedings in the state courts would be, in the nature of things, superfluous and unnecessary, for the reason that the main object of the proceeding is to forfeit the charter and franchises of the corporation, and why assume to discharge from further liability a debtor whose legal entity is to be dissolved? If its corporate existence is to be terminated it matters little what becomes of its unpaid balances.

It also seems clear to us that in so far as a state law attempts to administer on the effects of an insolvent debtor and distribute them among creditors, it is to all intents and purposes an insolvent law, although it may not authorize a discharge of the debtor from further liability on its debts.

We have no doubt that the proceeding in the state court to forfeit the charter and corporate franchises of this company is entirely valid and within the powers and jurisdiction of that court, perhaps exclusively so. The state having created the corporation may undoubtedly dissolve it in its own way, consistent with the terms of the grant.

The fallacy of the respondent's argument seems to us to consist in the assumption that because the state court had jurisdiction for the dissolution of the corporation, it can therefore hold jurisdiction under all circumstances for the distribution of the assets. If the fact of insolvency had not existed, and no act of bankruptcy had been committed, the state court would probably have had the right to administer the assets if once within its control, as an incident to the principal object to the proceeding which was the dissolution of the corporation. But, as before stated, when insolvency, or other facts, intervene so as to make the debtor a proper subject for the operation of the bankrupt act, the exclusive jurisdiction of the bankrupt court

attaches, and the state court and those acting under its mandate must surrender the control of the assets, whatever may be the final decree in regard to the continuance of the corporation. When the corporation found itself insolvent, or was certified to be insolvent by the state auditor, acting under the state law, and proceedings were instituted for the dissolution of the corporation and the administration of its assets, it was the duty of the corporation at once to voluntarily file its petition to be adjudged a bankrupt in the federal court, and its failure to do so, and its acquiescence in the proceedings by which its assets were placed under the control of the state court, is in itself an act of bankruptcy.

This is not a case of concurrent jurisdiction between the state and federal courts. In all cases where the state and federal courts have concurrent jurisdiction, tne court which first obtains control of the parties and property by judicial proceedings will retain it, and the authorities cited by the counsel from the 8th Howard, and later cases, are full in point, but we conceive they do not apply to this case, inasmuch as this court has exclusive jurisdiction in cases of bankruptcy. In our view, then, the admitted facts show the respondent guilty of the act of bankruptcy charged in the petition, and nothing in the proceedings had before the state court tends to oust this court of its jurisdiction and authority to adjudicate the respondent a bankrupt.

The precise steps by which the officers of this court shall hereafter obtain possession of the assets of the bankrupt need not now be indicated, as the action of this court in that regard will be governed by circumstances as they may hereafter arise.

In thus announcing our conclusions, we do not consider that we are adopting any new rule, or making even a new application of an old one, as the pathway we are treading appears to us to be well beaten by precedents and authority. Nor should we have taken pains to so fully state our views but for the fact that the overwhelming calamity which befel this city on the 9th of October last, brought financial ruin upon a large number of insurance companies doing business here, and makes it seem desirable that a tolerably full exposition should be given of the law governing the rights and duties of insurers and insured.

It is also proper to add that the petition in this case charges a further act of bankruptcy —in that said insurance company, on or about the 31st day of October last, being then insolvent, paid one of its creditors in full, thereby giving such creditor a preference over other creditors. And it is admitted in the answer that after the company became insolvent a large sum of money fell due one Tuthill King for rent of the lot on which the company had erected a valuable building; and as this lease was deemed a valuable asset, and would be forfeited unless the rent was paid at maturity, the company paid the same, deeming that it was thereby subserving the best interests of its creditors.

We have no doubt but what the admitted facts applicable to this charge make out a technical act of bankruptcy. But no stress was laid upon it in the argument, as all parties seemed desirous of a decision upon the other charges.

The expenditure complained of seems to have been judicious and made in good faith, and this court would probably, on the facts stated, have authorized it, but this does not change the character of the act under the law.

It was undoubtedly a preference, and as such, a technical act of bankruptcy. An order of adjudication will be entered as prayed in the petition.

Suffering property to be taken under an order of the state court, appointing a receiver in an action instituted by the attorney general of the state to dissolve the corporation, is an act of bankruptcy. In re Washington Marine Ins. Co. [Case No. 17,246].